**SO ORDERED.**

**SIGNED October 1, 2015.**



ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

PATRICIA ANDERSON,                          Case No. 10-51074

    Debtor                                  Chapter 7
----------------------------------------------------------------
PAUL N. DEBAILLON, TRUSTEE,
PATRICIA ANDERSON,
AB FAMILY, INC.,

    Plaintiffs

VERSUS                                      Adversary No. 13-5017

RUBY BROUSSARD DUHON ALFRED,
VALERIE DUHON BARANCO,
CHAD DUHON,

    Defendants
----------------------------------------------------------------
REASONS FOR DECISION
----------------------------------------------------------------

    This is an adversary proceeding between the debtor, Patricia
Anderson, and multiple defendants involving a dispute over the
ownership of a home healthcare business. Paul DeBaillon, the duly-

appointed trustee in the above-captioned case, and Anderson (together, "plaintiffs") commenced this adversary proceeding seeking a declaratory judgment that Anderson and defendant Ruby Alfred formed a partnership for purposes of operating a home healthcare business, AB Family, Inc., and that Anderson is entitled to her share of the partnership. The complaint also asserts various damage claims for breach of fiduciary duty, mismanagement, unfair trade practices, single business enterprise and piercing the corporate veil. Defendants Alfred and Valerie Baranco then moved for summary judgment on all of the claims asserted in the complaint. The court took the matter under advisement following oral argument. After considering the summary judgment record, the relevant authorities, and the parties' arguments, the court rules as follows.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference nor have the parties objected to the court entering a final order with respect to this motion.

-2-

## BACKGROUND

Anderson and Alfred began discussing the creation of a home healthcare business around 2002. Both Anderson and Alfred worked for another healthcare company, Louisiana Health. In 2004, Anderson and Alfred approached Dennis and Cordelia Broussard and discussed the Broussards' experience in opening up their own home healthcare business in New Iberia. Although Anderson contends that she and Alfred formed their partnership prior to their discussions with the Broussards, the summary judgment record includes no evidence of any written partnership agreement. Rather, Anderson relies on an alleged oral agreement to form a partnership with Alfred. In February 2005, Anderson and Alfred met with an attorney, Thomas Brumbaugh, about forming a Louisiana corporation to run their business. Alfred and Anderson could not serve as incorporators or own any shares in this business because they were still employed by Louisiana Health and could not afford to leave to run a new business. Moreover, because they were still employed by a company with a Medicaid provider number, they were precluded by law from having an ownership interest in another healthcare provider with a different Medicaid provider number. (Deposition of Patricia Anderson ("Anderson Depo.") at 31; Deposition of Ruby Alfred ("Alfred Depo.") at 12, 21; Affidavit of Thomas Brumbaugh ("Brumbaugh Aff.") at 1). Anderson was also worried about a

-3-

potential personal injury claim against her and did not want her name on any property that could be seized in the event of a money judgment. (Anderson Depo. at 34, 48). As a result, Alfred's daughter, Valerie Baranco, served as the sole incorporator of the business, AB Family, Inc., and Baranco executed the relevant incorporation documents. As the sole incorporator, Baranco paid Brumbaugh's attorney fees for drafting the documents. (Brumbaugh Aff. at 2). The initial capital for AB Family, Inc. was contributed by Alfred's son, Chad Duhon. (Anderson Depo. at 78; Alfred Depo. at 21). Neither Anderson nor Alfred contributed any of the initial capital to the company. (Anderson Depo. at 95). Nothing in the incorporation documents indicated that Anderson was an owner of AB Family, Inc. or that she was to receive any stock in the corporation. Instead, Anderson served as a W-2 employee and received regular compensation from AB Family, Inc. for her services. (Anderson Depo. at 14, 101). During the same period that Anderson was paid for her services to AB Family, Inc., the company's tax returns show that, except for 2007, the company experienced losses. (See Exhibit I to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment). The summary judgment record also shows that part of Anderson's responsibilities at AB Family, Inc., was filing personal care attendant license applications yearly with the Louisiana Department of Health and

-4-

Hospitals ("LDHH") on behalf of the company. The summary judgment record includes the applications filed by Anderson from 2006 through 2010, and those applications certify that Baranco was the company's sole owner. (Anderson Depo. at 49-50 and Exhibits 2-4 to deposition). Anderson's responsibilities also required her to execute Disclosure of Ownership and Control Interest Statements from 2006 to 2012 and file those statements with the LDHH under penalty of perjury. Again, these documents certify that Baranco was the sole owner of AB Family, Inc. (Anderson Depo. at 50-51 and Exhibits 1-4 to deposition). According to Anderson, the purpose of these forms is to identify all of the ownership interests in the corporation so that regulatory authorities can ensure that the owners of a regulated healthcare company are eligible to hold those interests. (Anderson Depo. at 54-55).

Anderson filed for relief under Chapter 7 of the Bankruptcy Code on July 12, 2010 and Paul DeBaillon was duly appointed as the Chapter 7 Trustee for the case. John Clifton Conine was subsequently appointed trustee in 2014 when Mr. DeBaillon passed away. In the Statement of Financial Affairs filed by Anderson, she represented that she was a director of AB Family, Inc., but nowhere in this statement or any of the other schedules she was required to file did she disclose that she had an ownership interest in AB Family, Inc. or any partnership with Alfred. (Anderson Depo. at

-5-

138, 149-51 and Exhibit 6 to deposition). In 2012, almost two years after the filing of her Chapter 7 case, the relationship between Anderson and Alfred soured. According to Anderson, Baranco, who was then executive director and president of AB Family, Inc., fired her and barred her from the company's offices. (Complaint at ¶¶ 16-17, 23). On May 15, 2013, the Trustee and Anderson commenced this adversary proceeding seeking (1) a declaratory judgment recognizing Anderson's ownership interest in AB Family, Inc., and/or the partnership allegedly formed by Anderson and Alfred, (2) damages for alleged breaches of fiduciary duty and mismanagement by the defendants in operating AB Family, Inc., (3) damages for misappropriation of company property as well as Anderson's termination under the Louisiana Unfair Trade Practice Act, La. R.S. 51:1401, and (4) a claim to pierce the corporate veil and/or declare that AB Family, Inc. and the partnership between Anderson and Alfred operated as a "single business enterprise." Chad Duhon was subsequently dismissed as a defendant. The remaining defendants then filed the instant motion for summary judgment seeking dismissal of all of the plaintiffs' claims.

DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine

-6-

dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a). The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial. See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party. See Calderone v. United States, 799 F. 2d 254, 259 (6th Cir. 1986). To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative

-7-

defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial. Celotex Corp., 477 U.S. at 324-326. If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims. Id. Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986). Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment. Celotex Corp., 477 U.S. at 330-331.

**B.  Plaintiffs' Declaratory Judgment Claim**

**1.  The Partnership Claim**

The crux of Anderson's Partnership claim is that she is entitled to a fifty percent (50%) share of the business operated by AB Family, Inc.  The primary hurdle for Anderson is that the

-8-

parties' initial discussions and planning for the business ultimately culminated in the formation of a Louisiana corporation in February 2005 with Baranco as the sole stockholder of that corporation. Anderson was never listed as an incorporator or owner, and the incorporation documents do not include any agreements with respect to Anderson's purported ownership interest in the business. The factual and legal theory of plaintiffs' partnership claim and request for declaratory relief is difficult to navigate. Plaintiffs apparently argue that (1) the formation of AB Family, Inc. was a mere sham and that the company was actually operated under the oral partnership between Anderson and Alfred, or, in the alternative, that (2) Anderson and Alfred formed two separate business entities in connection with their home healthcare business: a corporation **and** a partnership. If the court concludes that the parties created two separate entities, Anderson and the Trustee apparently contend that these two entities should be deemed a "single business enterprise" in which Anderson owns a proprietary interest. Regardless of how this claim is framed, plaintiffs have to establish that a partnership was created between Anderson and Alfred. There appears to be no dispute that the transactions and occurrences underlying Anderson's partnership claim were based in Louisiana and that Louisiana law should apply in determining whether a partnership was created. The three-element test

-9-

established by the Louisiana Supreme Court in _Darden v. Cox_, 123 So.2d 68 (La. 1960) is cited most frequently by Louisiana courts on the question of whether a business relationship amounts to a Louisiana partnership. Under _Darden_'s test, Anderson must establish three "essential" elements of a partnership:

> First, the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry, furnished to the business in determined proportions by them.
>
> Secondly, all parties must share in the losses as well as the profits of the venture.
>
> Thirdly, the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest.

Id. at 71 (citations omitted). Plaintiffs correctly point out that the creation of a partnership does not require a written partnership agreement. The three elements of the _Darden_ standard can be inferred from the parties' conduct. _See_, _e.g._, _Carr v. Masters_, 469 So.2d 1147 (La. App. 4th Cir. 1985) (recognizing that the intent to form a partnership can be inferred from circumstantial evidence, and courts do not require parties to expressly label their business relationship as a partnership). Nevertheless, plaintiffs' circumstantial evidence must establish the existence of each of _Darden_'s three elements.

-10-

Turning to the present case, plaintiffs have not come forward with competent summary judgment evidence that creates a genuine question of material fact with respect to the second and third elements of the _Darden_ test. With respect to the second element of the _Darden_ test, Anderson has come forward with no evidence establishing that the parties agreed to share in losses as well as the profits of the venture. There was no written or oral agreement between Anderson and Alfred to share the profits and losses of the business. Moreover, by her own admission, Anderson never actually shared in the profits and losses of the venture. With the exception of 2007, AB Family, Inc.'s federal tax returns show that the company suffered losses from 2006 through at least 2010. Despite these losses, Anderson was fully compensated by AB Family, Inc. for the work that she performed during this time period.

Citing _Sacco v. Pakston_, 133 So.3d 213, 220 (La. App. 4 Cir. 1/30/14), plaintiffs counter that Anderson contributed uncompensated "sweat equity" to the business even if she did not actually share in any of the losses suffered by AB Family, Inc. Plaintiffs' claim, however, cannot survive summary judgment based on _Sacco_ because Anderson has not come forward with evidence that she invested any "sweat equity" in the company. In her deposition, Anderson concedes that, unlike the plaintiff in _Sacco_, she was fully paid for all of the services she provided to AB Family, Inc.

-11-

(Anderson Depo. at 101). Sacco is also distinguishable on the grounds that, in contrast to the present case, the plaintiff in Sacco presented (1) written admissions by the defendant acknowledging that the plaintiff was entitled to an ownership share of the company, (2) evidence that the parties introduced themselves as partners, and (3) evidence that the plaintiff left his fifty percent (50%) share of the company's profits in the business. None of these facts are present in the present case. Accordingly, Anderson's reliance on Sacco and "sweat equity" does not create a genuine question of material fact as to the second element of the Darden test.

With respect to the third element of the Darden test, Anderson has not come forward with competent summary judgment evidence showing that the parties formed "a community of goods in which each party has a proprietary interest." To the contrary, the documents created during the formation of AB Family, Inc. identify Baranco as the sole owner of AB Family, Inc. Moreover, the documents that Anderson filed with LDHH certified that Baranco held the only proprietary interest in AB Family, Inc. and that there were no undisclosed proprietary interests in the company. (Anderson Depo. at 49-55). Anderson and the Trustee are bound by these admissions.

Anderson and the Trustee attempt to avoid the impact of these admissions by arguing that the Trustee is not bound by Ms.

-12-

Anderson's prior admissions. This argument appears to be based on Fifth Circuit precedent that allows a bankruptcy trustee to pursue claims that may otherwise be barred by the doctrine of judicial estoppel in cases where a debtor fails to disclose a cause of action in a bankruptcy case. See, e.g., In re Fluence, 738 F.3d 126 (5th Cir. 2013). The admissions at issue here, however, were not made in the context of Anderson's bankruptcy filing, but involve pre-petition admissions that directly relate to whether or not Anderson had a valid cause of action as of the petition date. The case law is clear that a trustee steps into the shoes of the debtor as far as pre-petition causes of action. In re Scott Acquisition Corp., 364 B.R. 562,570 (Bankr. D. Del. 2007) (trustee steps into the shoes of the debtor and is subject to the same defenses as the debtor); Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 358 (3rd Cir. 2001) (recognizing that "bankruptcy law mandates that the trustee step into the shoes of the debtor when asserting causes of action"). If the debtor cannot establish the existence of a partnership because of adverse admissions made by the debtor pre-petition, a trustee cannot improve his position by requesting that the court simply ignore the debtor's admissions. See Armstrong v. Norwest Bank, 964 F.2d 797 (8th Cir.1992) (trustee bound by pre-petition stipulations agreed to by the debtor).

-13-

The only factor that tends to weigh in plaintiffs' favor with respect to _Darden_'s third element is evidence that Anderson guaranteed a company credit card and paid some company-related expenses. The act of guaranteeing a company's debts is an act typically associated a company's owner. However, the summary judgment record also shows that the company compensated Anderson for these expenses and that Anderson never suffered any losses as a result of a guarantee. Anderson also makes a conclusory statement that she personally suffered adverse tax consequences because of her involvement with AB Family, Inc., but includes no competent summary judgment evidence to support this conclusory allegation. Considering the summary judgment record as a whole, plaintiffs have not created a genuine issue of material fact as to whether Anderson had a proprietary interest in any partnership formed to conduct the business of AB Family, Inc.

Nor do the Louisiana partnership cases cited by plaintiffs support their partnership claim based on the summary judgment record. As explained previously, the _Sacco_ case is distinguishable and cannot be used by Anderson to support the second prong of the _Darden_ test. Plaintiffs' remaining cases are similarly distinguishable. For example, in _Carr v. Masters_, 469 So.2d 1147 (La. App. 4 Cir. 1985), the plaintiff assumed the defendant's bank loan and agreed to pay for the business' inventory. The parties in

<u>Carr</u> also received a fixed salary of $100.00 per week and divided net profits equally. The present case presents no such evidence that Anderson invested in the business or that Anderson and Alfred shared profits or losses.

Similarly, in <u>Settles v. Paul</u>, 61 So.3d 854 (La. App. 2 Cir. 2011), the plaintiff and defendant were married and shared equally in the profits of the business. They used profits from the business to make improvements to their home. There is no such evidence in the present case with respect to Ms. Anderson's dealings with AB Family, Inc. Rather, Anderson received compensation solely as a W-2 employee of the company and, by her own admission, was fully compensated for her services.

Finally, in <u>Lang v. Sprall</u>, 36 So.3d 407 (La. App. 2 Cir. 2010), the ownership of the business was placed in the name of one partner so that the other partner would not have to disclose it to a former spouse in a divorce proceeding. However, unlike the present case, the unnamed partner invested property in the operation of the business. The dispute in <u>Lang</u> also centered on the two parties who allegedly agreed to form a partnership and did not, as here, involve a third party who owns the entirety of the business but is a stranger to the alleged partnership agreement. In the present case, Anderson essentially seeks to divest Baranco of her one hundred percent ownership (100%) interest in AB Family, Inc.

-15-

based on an alleged oral agreement solely between Anderson and Ruby Alfred. In sum, plaintiffs have not come forward with summary judgment evidence sufficient to create a genuine question of material fact as to two of the essential elements of a partnership claim under <u>Darden v. Cox</u>, 123 So.2d 68. Accordingly, the court grants defendants' motion for summary judgment as to plaintiffs' partnership claim and request for declaratory relief.

### 2. Unclean Hands

Defendants also move for summary judgment on their affirmative defense of unclean hands. According to defendants, Anderson's partnership claim is grounded on admissions that the incorporation of AB Family, Inc. was a sham and that the business was organized so that Anderson could conceal her ownership interest from creditors and from state regulators. According to defendants, if Anderson did indeed have an undisclosed interest in AB Family, Inc., she misrepresented that fact in sworn filings with the state. Traditionally, courts have recognized the "unclean hands" doctrine as a defense to a request for equitable relief. Louisiana courts have also recognized this doctrine as a defense to a fraud claim and, as in the present case, a defense to a request for declaratory relief relating to ownership interests in a business. <u>Allvend, Inc. v. Payphone Commissions Co., Inc.</u>, 804 So.2d 27, 34 (La. App. 4 Cir. 5/23/01) (proof of plaintiff's "unclean hands" barred fraud claim);

<u>Guilbeau v. Domingues</u>, 149 So.3d 825,829-830 (La. App. 3 Cir. 10/1/14) (unclean hands barred declaratory relief as to ownership of stock). In <u>Guilbeau</u>, the defendant's daughter transferred her stock in the family business to the defendant in exchange for cancelling a debt. When the defendant refused his daughter's subsequent request to return the stock, she sued and sought a declaratory judgment that she was the owner of the stock. She argued that the original transfer was merely a sham. The trial court granted summary judgment on the grounds of plaintiff's "unclean hands" and the appellate court affirmed. <u>Id</u>. According to the court, this doctrine "prevents a litigant from maintaining an action if he must rely, even partially, on his own illicit or immoral act to establish a cause of action." <u>Id</u>. In that case, the summary judgment record established that the plaintiff transferred the stock to the defendant, in part, to conceal the stock from creditors. Here, defendants argue that Anderson can prevail on her partnership claim only by establishing that the incorporation of AB Family, Inc. was a sham designed to deceive creditors and state regulators, and that Anderson carried out that deception by filing false statements under penalty of perjury with the state. Remarkably, there does not appear to be any material dispute over these facts. Based on <u>Guilbeau</u> and <u>Allvend</u>, these facts are sufficient to establish defendants' unclean hands defense against

-17-

Anderson as a matter of law.

Plaintiffs counter that, even if Anderson is subject to the defense, the Trustee is not subject to an unclean hands defense based on In re Student Fin. Corp., 335 B.R. 539 (D. Del. 2005). Plaintiffs' reliance on In re Student Fin. Corp. is misplaced. In that case, the court ruled that the trustee's claim for equitable subordination (which is a claim that arises under federal bankruptcy law) was not subject an unclean hands defense. However, bankruptcy courts distinguish between claims that arise under federal bankruptcy law – like equitable subordination – and claims that arise under state law for purposes of applying the unclean hands defense. Even courts that hold that the defense is inapplicable to an equitable subordination claim recognize the defense's applicability to claims that arise under state law and that are based on the debtor's pre-petition conduct. See, e.g., In re Automotive Professionals, Inc., 398 B.R. 256, 261 (Bankr. N.D. Ill. 2008). Here, plaintiffs' partnership claim and defendants' unclean hands defense arise from state law and are based on the pre-petition conduct of the parties. Accordingly, the summary judgment record establishes defendants' unclean hands defense as a matter of law and bars recovery by Anderson and the Trustee.[1]

───────────────

[1] AB Family, Inc. is also named as a plaintiff. However, the request for declaratory relief appears to be asserted only by Anderson and the Trustee based on Anderson's purported rights

-18-

## B. Plaintiffs' Piercing the Corporate Veil and Single Business Enterprise Claims

Defendants also seek summary judgment on plaintiffs' "piercing the corporate veil" and "single business enterprise" claims. Plaintiffs' legal and factual theories underlying these claims are difficult to navigate  even if the court accepts the allegations in plaintiffs' complaint as true. The gravaman of these claims appears to be that Anderson and Alfred created an oral partnership to conduct the home healthcare business that purportedly operated under the aegis of AB Family, Inc. Plaintiff contends that the incorporation of AB Family was a mere sham, and that the parties treated the two business entities – the partnership between Anderson and Alfred and the corporation owned solely by Ms. Baranco – as a single business enterprise.  Plaintiffs contend that the court should disregard the separate corporate existence of AB Family, Inc. and declare that Anderson holds an ownership interest in the combined business enterprise.

In Louisiana and elsewhere, a corporation is deemed a distinct

---

under an oral partnership agreement.  AB Family, therefore, is named purely as a nominal plaintiff. Moreover, in any event, Anderson (and, by extension, the Trustee) have no authority to act on behalf of AB Family, Inc. based on the summary judgment record: Baranco is the sole owner of the stock of the company and Anderson has been terminated from her employment with the company. The court, therefore, grants summary judgment with respect to any claims that are asserted on behalf of AB Family, Inc.

legal entity separate from its shareholders. See Riggins v. Dixie Shoring Co., 590 So. 2d 1164, 1167 (La. 1991); Brennan's, Inc. v. Colbert, 85 So. 3d 787, 791 (La. App. 4th Cir. 2012). This distinction between corporation and shareholder insulates a corporation's shareholders from personal liability for the corporation's debts. Riggins, 590 So. 2d at 1167; N. Hayes & Associates Realty Co., LLC v. Moliere, 982 So. 2d 173, 178 (La. App. 5th Cir. 2008); La. R.S. 12:93 (codifying the limited liability of corporate shareholders). Louisiana courts also recognize that, under certain circumstances, the corporate veil may be pierced to impose personal liability on a corporation's owners. Id. Traditional veil-piercing doctrines are generally limited to cases where the separate existence of the corporation has been abused and where the court finds that piercing the corporate veil is necessary to remedy fraud, illegality, or other inequitable conduct by the corporation's shareholders. Id. In Green v. Champion Ins. Co., the court created a new distinct doctrine for disregarding the legal distinctions between separate corporate entities and imposing personal liability for the debts of one corporation on a separate, but affiliated company. Following the Green case, courts outside of Louisiana's First Circuit have applied Green's single business enterprise doctrine in varying forms, although some commentators have criticized the broad scope of the doctrine and some courts have

-20-

attempted to tether the doctrine to more traditional veil-piercing doctrines. See, e.g., Kyle M. Bacon, "The Single Business Enterprise Theory of Louisiana's First Circuit: An Erroneous Application of Traditional Veil-piercing," 63 La. L. Rev. 75 (Fall 2002); Town of Haynesville, Inc. v. Entergy Corp., 956 So. 2d 192, 195-99 (La. App. 2d Cir. 2007) (applying traditional veil-piercing requirements to claim that affiliated entities were a single business enterprise).

Here, plaintiffs' veil-pricing claims rely more on Green's "single business enterprise" theory than traditional veil-piercing theories. To prevail, plaintiffs have to first establish that there was a partnership that should be combined with the corporation owned by Ms. Baranco. As set forth above, plaintiffs' partnership claims fail as a matter of law. Since plaintiffs cannot establish the existence of a separate partnership, they cannot establish the predicate for their veil-pricing/single business enterprise claims. Absent proof that the parties created a distinct partnership, allegations that defendants disregarded the corporate formalities of AB Family, Inc. would only support a traditional veil-piercing remedy as to AB Family, Inc. and potentially expose Baranco (as the company's sole stockholder) to personal liability for the company's debts. However, this is not the remedy plaintiffs are seeking with respect to their partnership claim and request for declaratory

-21-

relief. Rather, they are seeking to claim an ownership interest in the combined enterprise. Therefore, the court grants defendants' motion summary judgment with respect to these claims.

## C. Plaintiffs' Mismanagement and Breach of Fiduciary Duty Claims

Defendants next challenge plaintiffs' claims for mismanagement and breach of fiduciary duty. These claims are based on plaintiffs' claims the Alfred mismanaged AB Family, Inc and breached her fiduciary duties by withdrawing money from the company for personal use and by causing AB Family, Inc. to incur trust fund tax liabilities and penalties. As with plaintiffs' veil-piercing claims, it is difficult to parse out the legal basis for these claims. To the extent that plaintiffs are relying on the existence of a separate partnership to argue that Alfred breached fiduciary duties owed directly to Anderson as a partner, the court's ruling on Anderson's partnership claim disposes of these claims: if Anderson cannot establish the existence of a partnership, she cannot maintain a claim based on fiduciary duties that presuppose the existence of a partnership. To the extent that Anderson contends that Alfred's conduct violated duties owed to AB Family, Inc., Anderson cannot assert these claims because they are the corporation's claims. See Christopher v. Liberty Oil & Gas Corp., 665 So.2d 410, 411 (La. App. 1 Cir. 10/6/95); Beyer v. F & R Oilfield Contractors, Inc., 407 So.2d 15, 16-17 (La. App. 3 Cir.

-22-

11/10/81), writ den'd, 411 So.2d 451 (La. 1982). Anderson can only
assert these claims in a derivative capacity, and she cannot do so
here because she is not a stockholder in AB Family, Inc.; Baranco
is the sole stockholder. See Christopher, 665 So.2d at 411
("Standing is justified only by this proprietary interest created
by the stockholder relationship and the possible indirect benefits
the nominal plaintiff may acquire qua stockholder of the corporation
which is the real party in interest.") Accordingly, the court grants
defendants' motion for summary judgment with respect to plaintiffs'
mismanagement and breach of fiduciary duty claims.

**D. Plaintiffs' Unfair Trade Practice Claims**

Defendants next challenge plaintiffs' claims under the
Louisiana Unfair Trade Practice Act, La. R.S. 51:1401, et seq. This
provision creates a cause of action for "[a]ny person who suffers
any ascertainable loss of money or movable property ... as a result
of the use or employment by another person of an unfair or deceptive
method, act, or practice ...." La. R.S. 51:1409(A). Plaintiffs
contend that defendants violated this provision by misappropriating
the property of AB Family, Inc. for personal use, and by wrongfully
terminating Anderson and barring her from the company's offices.
With respect to plaintiffs' misappropriation allegations, these
allegations frame a claim for damages suffered by AB Family, Inc.,
not Anderson. As with plaintiffs' mismanagement and fiduciary duty
claims, plaintiff's unfair trade practice claim is a claim that can

-23-

only be asserted by the corporation or by a corporate stockholder in a derivative capacity.

With respect to Anderson's termination, the summary record reflects that Anderson was a W-2 employee of the company. Plaintiffs have not come forward with any evidence of an employment contract, a company handbook, or any other document or policy that restricted the company's ability to terminate Anderson. As a result, Anderson was an "at will" employee of AB Family, Inc. and her termination cannot give rise to a claim under the Louisiana Unfair Trade Practice Act. See La. Civil Code Art. 2747 ("A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause."); see also Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 35 So.2d 1053, 1061 (La. 2010) (exercising rights under the "at will" employment doctrine does not give rise an unfair trade practice claim). Accordingly, the court grants defendants' motion for summary judgment with respect to plaintiffs' unfair trade practice claims.

**E.  Plaintiffs' Remaining Claims**

Finally, plaintiffs assert additional claims for attorneys' fees, indemnity and contribution, and "breach of promise." These claims are purely derivative of the claims already addressed by the court and cannot survive as independent claims. For example,

-24-

plaintiffs' "breach of promise" claim appears to be grounded on plaintiffs' request for a declaration that the parties created a partnership and Anderson was promised an ownership interest in that partnership. Because the court granted summary judgment with respect to plaintiffs' partnership claim, this "breach of promise" claim cannot survive as an independent claim. Accordingly, the court grants summary judgment with respect to the remaining claims asserted in plaintiffs' complaint.

### CONCLUSION

For the reasons stated herein, the court GRANTS defendants' motion for summary judgment in its entirety. Defendants shall submit a judgment within ten (10) days that reflects the court's ruling.

###